John I. Snyder, Jr. and Elfrida A. Snyder v. Commissioner.
Snyder v. Commissioner
Docket No. 83960.
United States Tax Court
T.C. Memo 1964-107; 1964 Tax Ct. Memo LEXIS 229; 23 T.C.M. (CCH) 628; T.C.M. (RIA) 64107; April 23, 1964
*229 Held, no bona fide indebtedness existed in connection with a transaction involving the purported purchase of United States Treasury Notes, and consequently the payment made by petitioner to a bank purportedly as interest is not deductible as interest on an indebtedness within the meaning of section 163(a) of the I.R.C. of 1954. Harry F. Weyher, 52 Vanderbilt Ave., New York, N. Y., and Wm. Sondericker, for the petitioners. James Q. Smith, for the respondent. MULRONEY Memorandum Findings of Fact and Opinion MULRONEY, Judge: Respondent determined a deficiency in the petitioners' income tax for 1957 in the amount of $31,861.89. The issue is whether petitioners are entitled to a deduction of $61,289.12 in 1957 within the meaning of section 163 of the Internal Revenue Code *230 of 1954. [1]
Findings of Fact Some of the facts were stipulated and they are so found. John I. Snyder, Jr. and Elfrida A. Snyder, husband and wife, are residents of Scarsdale, New York. They filed a joint income tax return for 1957 with the district director of internal revenue for the Lower Manhattan District of New York. John I. Snyder, Jr. will hereinafter be called the petitioner. Petitioner is chairman of the board of directors and president of U.S. Industries, Inc., and his reported compensation in 1957 from that corporation was $173,450.31. He also reported various director's fees in 1957 in the amount of $3,395. Petitioner also operates a tree nursery business in Long Island and makes other investments from time to time. Prior to 1957 petitioner entered several transactions arranged by M. Eli Livingstone involving the purchase of United States Treasury Notes. Prior to December 11, 1957 Livingstone contacted the South Side Bank & Trust Company (hereinafter called South Side) in Chicago, Illinois, with regard to the United States Treasury Note transaction *231 here involved. On December 11, 1957 petitioner forwarded for deposit with South Side in a personal checking account, two cashier's checks aggregating $10,000. On December 11, 1957 C. F. Childs and Company (hereinafter called Childs) a securities dealer in New York, issued to petitioner four confirmation slips concerning an alleged sale to petitioner of four series of 1 1/2 percent United States Treasury Notes, par value $200,000, with a maturity date of October 1, 1962, for a price of 93-24/32, or $187,500 plus accrued interest of $626.37 for each Treasury Note, or a total consideration of $188,126.37, with a payment date of December 16, 1957. The four confirmation slips each indicated that each series of United States Notes was to be delivered to the Hanover Bank, New York City, on December 16, 1957 for the account of South Side. On December 12, 1957 petitioner authorized South Side to receive the above United States Treasury Notes for petitioner's account against payment to Childs of $187,500 for each series of United States Treasury Notes, and on the same date authorized Childs to deliver to South Side the four series of United States Treasury Notes against payment of $187,500 for *232 each series. It is stipulated that on December 16, 1957 petitioner issued his check in the amount of $2,505.48 to Childs, which check was drawn on the Hanover Bank and that this amount allegedly represented payment to Childs of the $626.37 interest which had accrued on each series of United States Treasury Notes as of December 16, 1957. On December 16, 1957 the following events took place: (1) petitioner executed four identical promissory notes each in the amount of $187,500 payable to South Side on October 1, 1962. Each note specified that payment was not to be accelerated and that there would be no calls for additional collateral. Each note specified that total interest was $30,322.28, of which $15,322.28 was payable in cash "herewith" and the balance to be paid by application of the coupons (as they became due) on the collateral deposited; (2) petitioner's attorney transmitted to South Side the four promissory notes each in the amount of $187,500; (3) petitioner executed a promissory note in the amount of $52,000 bearing 6 percent interest, payable to Corporate Finance Corporation on October 1, 1962, and giving Corporate Finance Corporation a lien on the four series of United *233 States Treasury Notes. Payment of the promissory note could not be accelerated, and it was payable only out of the collateral on which the lien was given; (4) petitioner advised South Side by letter that he had given Corporate Finance Corporation a promissory note for $52,000 and a lien against the United States Treasury Notes; (5) Corporate Finance Corporation executed several letters to South Side in which Corporate Finance Corporation confirmed the purchase from South Side of the petitioner's four promissory notes each in the amount of $187,500; (6) Corporate Finance Corporation executed several letters to South Side authorizing delivery by South Side of the four series of United States Treasury Notes to Childs, at the Hanover Bank in New York City, against payment of $750,000. The letters also advised South Side that it was to apply these proceeds against the purchase by Corporate Finance Corporation from South Side of petitioner's four promissory notes; and (7) Corporate Finance Corporation advised petitioner that "we have this day assigned your loan, dated December 16, 1957, in the amount of $52,000.00, to [South Side]". Corporate Finance Corporation executed an assignment *234 to South Side of petitioner's promissory note in the amount of $52,000. Petitioner, in a letter to South Side, acknowledged the assignment. On December 20, 1957 petitioner forwarded to South Side his four checks drawn on his account at South Side and payable to South Side, each in the amount of $15,322.28, or a total of $61,289.12. The four checks were cashed by South Side on December 23, 1957. Petitioner deducted the amount of $61,289.12 as interest on his 1957 return. By letter dated December 20, 1957 South Side authorized the Hanover Bank to receive from Childs $200,000 par value 1 1/2 percent United States Treasury Notes on December 23, 1957 and charge South Side's account in the amount of $187,500, and then redeliver the same notes to Childs for account of Corporate Finance Corporation against a credit of $187,500 to South Side's account. After this series of notes had been cleared in this fashion, the next series was cleared in the same fashioin, and then the next two in order and in the same fashion until the four series of United States Treasury Notes were cleared through South Side's account. South Side explained in its letter to Hanover Bank that "[it] is essential *235 that each transaction be completed as to receipt and delivery before the next transaction is started, as a question of our legal lending ability is involved." On December 23, 1957 Hanover Bank made the series of cross transfers on its books as authorized. On December 23, 1957 the following entries were made on the books of South Side: (1) a deposit of $52,000 was entered on petitioner's account reflecting the $52,000 received by petitioner from Corporate Finance Corporation; (2) in a general ledger account entitled "Loan Account, John I. Snyder, Jr." an asset aggregating $750,000 was entered in four series, each in the amount of $187,500, and it was cleared on the same date by four corresponding entries, each in the amount of $187,500; (3) in the same general ledger loan account as above, four entries (debits) of $14,609.43 each (totaling $58,437.72) were made reflecting the interest and discount yet to accrue on account of the four series of United States Treasury Notes. Also, four entries (debits) of $695.18 and four entries (debits) of $17.67 were made, which totaled $2,851.40 and reflected the accrued interest on the four series of United States Treasury Notes. The total of these *236 12 debit entries amounted to $61,289.12; and (4) in the same general ledger loan account as above, four credits of $15,322.28 each, or a total of $61,289.12, were entered reflecting the application of four checks, each in the amount of $15,322.28, which had been charged to petitioner's checking account on the same date. On January 24, 1958 South Side forwarded to Corporate Finance Corporation the petitioner's four promissory notes, each in the amount of $187,500, and also credited the checking account of Corporate Finance Corporation as follows: Amount of interest prepaid by John
I. Snyder, Jr.
$61,289.12
Less - Interest, service charge and re-
imbursement of attendant expense
of these transactions
2,851.40
Balance of unearned interest due to
Corporate Finance Corporation
credited to checking account
$58,437.72
Petitioner's four promissory notes, each in the amount of $187,500, were stamped as paid and canceled in December 1961 by Corporate Finance Corporation. The four series of United States Treasury Notes were also sold in 1961. Around December 16, 1957 the Government bond market was fluctuating widely. The closing published bid and asked price for *237 1 1/2 percent United States Treasury Notes due October 1, 1962 as of December 9, 10, 11, 16 and 23, 1957 were as follows: 1957
Bid
Asked
December 9
93 24/32
94
December 10
94
94 8/32
December 11
94 4/32
94 12/32
December 16
94 4/32
94 12/32
December 23
94 2/32
94 10/32
Petitioner was actually out of pocket on all transactions in the following amounts: Payment to Childs
$ 2,505.48
Deposit at South Side
$10,000.00
Less unexpended
710.88
9,289.12
Total
$11,794.60 These funds were applied as follows: Childs
$ 2,505.48
South Side
2,851.40
Corporate Finance Corp
$58,437.72
Less note
52,000.00
6,437.72
Total
$11,794.60
Respondent disallowed the deduction of $61,289.12 claimed by petitioner on his 1957 return as interest paid to South Side. Opinion Section 163 allows a deduction for "interest * * * on indebtedness", and this language has been interpreted to mean "compensation for the use or forbearance of money." Deputy v. Du Pont, 308 U.S. 488. Only if a true "indebtedness" existed between petitioner and South Side would petitioner's payment of $61,289.12 to South Side *238 in 1957 qualify as "interest" within the meaning of the statute. In a series of cases in this and other courts it has been held that similar Livingstone type transactions, though punctilious in form, lacked commercial and economic reality, and that the interest deductions claimed by participants in such transactions were not deductible. See Sammy Cahn, 41 T.C. 858 (March 19, 1964) and the cases therein cited. We believe those cases are controlling here. Once again we have an imposing series of paper transactions and book entries purporting to show that the petitioner borrowed a substantial sum of money from South Side to purchase United States Treasury Notes. We have examined the record carefully and cannot find that South Side (or anyone else) ever made any loan to petitioner. All of the entries in petitioner's alleged loan account on the books of South Side were made under the same date, so that in the course of that day (December 23, 1957) the account went from zero to zero. There is absolutely no evidence that any true "indebtedness" ever existed between petitioner and South Side. The petitioner's four promissory notes in the total amount of $750,000 ended up with *239 Corporate Finance Corporation, and the United States Treasury Notes (in the face amount of $800,000) shuttled back and forth between Childs and the Hanover Bank, where they appear to have rested for the account of Corporate Finance Corporation against payment of the four promissory notes. The record shows that the United States Treasury Notes were sold in 1961, and that the sale was made without petitioner's prior approval. The record also shows that the petitioner's four promissory notes were canceled by Corporate Finance Corporation in December 1961. Petitioner testified at the trial that he did not pay off these notes himself. We are persuaded from this record that, in spite of the documentary trappings, petitioner did not in fact receive any loan from South Side (or from Corporate Finance Corporation). There is no variation in the instant case which would compel a departure from our decisions in the usual Livingstone situation. It is an immaterial distinction that the purported lending agency is a bank rather than a finance company with little or no capital to lend. Joseph H. Bridges, 39 T.C. 1064, affd. 325 F. 2d 180. Petitioner places some reliance *240 on L. Lee Stanton, 34 T.C. 1, but there the reality and validity of the series of transactions were conceded and it was held a genuine indebtedness existed and the payments addressed to interest on that indebtedness were held deductible. Petitioner appears to recognize that the fact situation in Joseph H. Bridges, supra, is similar to the one before us, but seeks to distinguish it by pointing out that the taxpayer in the Bridges case was not an experienced investor and that he did not expect an economic profit from the transaction aside from tax reduction, while here the petitioner is an experienced investor and did have an expectation of making an economic gain from the purchase and sale of the United States Treasury Notes. We are not persuaded that petitioner entered this transaction with any expectation of making a profit. [2] He testified that Livingstone had arranged similar transactions for him in 1953, 1954, 1955 and 1956. He was asked at the trial whether he ever made any money on any of these transactions and he testified that "I don't remember." As to any gain realized on the 1957 transaction, he testified that it was "[nothing] of any substance. *241 " Moreover, even if petitioner did, in fact, entertain some hope of profit, we do not think it would help him. In Sammy Cahn, supra, we said that the "presence of a risk of gain or loss cannot make a bona fide loan out of one that exists only on paper." In Rubin v. United States, 304 F. 2d 766, which also involved a Livingstone transaction, the Court, in holding against the taxpayer, considered it immaterial that he had made a profit on the transaction.
We hold that no bona fide "indebtedness" existed between petitioner and South Side (or Corporate Finance Corporation) and that the $61,289.12 paid by petitioner to South Side in 1957 did not represent "interest" on an "indebtedness" within the meaning of the statute. Decision will be entered for the respondent. Footnotes
1. All section references will be to the Internal Revenue Code of 1954, as amended, unless otherwise noted.↩
2. As for the possibility of incurring any loss, petitioner testified that "because of the nature of the transaction itself" he was "backstopped against loss."↩